UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORENDA CRAWFORD,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:13-cv-2278-EFB<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying, in part, her applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is granted and defendant's motion is denied.

I.  BACKGROUND

Plaintiff filed an application for a period of disability and DIB on February 23, 2010, and an application for SSI on January 7, 2011. Administrative Record ("AR") 101, 169-182. Both applications alleged that plaintiff had been disabled since December 4, 2009. *Id*. at 170, 174. Plaintiff's applications were denied initially and upon reconsideration. *Id*. at 107-111, 113-117.

/////

1

On October 12, 2011, a hearing was held before administrative law judge ("ALJ") K. Kwon. *Id*. at 56-95. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified. *Id*.

On December 16, 2011, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act at any time from the date of her alleged onset of disability through the date the decision.[1] *Id*. at 40-50. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

2. The claimant has not engaged in substantial gainful activity since December 4, 2009, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

\* \* \*

3. The claimant has the following severe impairments: diabetes mellitus, depressive disorder, and obesity (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She is capable of simple, routine, 1-2 step unskilled light work with limited interaction with the general public. She is unable to climb ladders, ropes and scaffolds.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born on September 16, 1956 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

/////

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 4, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id*. at 42-49.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id*. at 33-36, and the Appeals Council granted a review. *Id.* at 166-168. On September 5, 2013, the Appeals Council reversed in part and found plaintiff to be disabled beginning September 15, 2011, the day her age category changed to advanced age (55). *Id.* at 3-11. The appeals counsel affirmed the finding of not disabled for the period December 4, 2009, the alleged date of onset of disability, to September 15, 2011, adopting the ALJ's evidentiary findings as to that period. *Id*. at 7. Plaintiff now challenges the Commissioner's finding that she was not disabled before September 15, 2011.

II.     LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues the ALJ erred by: (1) failing to find plaintiff's affective and anxiety disorders were severe impairments at step two of the sequential evaluation process; (2) failing to consider all of his mental impairments at step three; (3) rejecting the opinion of plaintiff's treating physician; (4) failing to provide proper rationale for discounting plaintiff's subjective complaints and credibility; and (5) failing to rely upon VE testimony tendered in response to a complete hypothetical question. *Id.* at 8-13. Plaintiff further argues that these errors led to an incorrect residual functional capacity ("RFC") assessment that plaintiff was capable of performing "light work," which was relied upon by the Appeals Council in a misapplication of the Medical Vocational Guidelines ("Grids"). *Id.* at 6.

A. The ALJ's Failure to Find Plaintiff's Mental Impairments as Severe at Step Two was Harmless Error

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by failing to find plaintiff's affective and anxiety disorders were severe impairments. ECF No. 16 at 11.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it unlikely they would be disabled even if age, education, and experience were not taken into account. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1502(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basis work activities." 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p, 1996 SSR LEXIS 10 (1996)).

/////

1    At step two the ALJ found plaintiff's only severe impairments were diabetes mellitus,
2 depressive disorder, and obesity. AR 42. In making this finding, the ALJ did not address any
3 evidence concerning plaintiff's anxiety disorder. Indeed, the ALJ's step two finding contained no
4 discussion of any evidence in the record. *Id.* While it is not entirely clear why the ALJ did not
5 find these mental impairments to be severe, the ALJ did in fact consider the impairments in
6 assessing plaintiff's RFC, and therefore any failure to properly characterize them as severe was
7 harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding harmless an ALJ's
8 failure to list certain impairment at step two where the ALJ fully evaluated the impairment at step
9 four); *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Smolen*, 80 F.3d at
10 1290 (if one severe impairment exists, all medically determinable impairments must be
11 considered in the remaining steps of the sequential analysis) (citing 20 C.F.R. § 404.1523); *Burch*
12 *v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (ALJ's failure to find claimant's obesity severe at
13 step two was harmless error where it was considered in determining claimant's RFC).

14    In assessing plaintiff's RFC, the ALJ specifically noted plaintiff's testimony of anxiety
15 attacks and Dr. Luo's finding that plaintiff's "mood was depressed and anxious." AR 46-47.
16 Because the ALJ considered plaintiff's anxiety in assessing his RFC, any error in failing to find
17 these impairments severe at step two was, at most, harmless.

18    B.  <u>The ALJ Did Not Err at Step Three</u>

19    Plaintiff next argues that the ALJ erred in assessing her mental impairments at step three.
20 ECF No. 16 at 12.

21    At step three of the sequential evaluation process, the ALJ determines whether the
22 claimant's impairment or combination of impairments meets or equals the criteria for a listed
23 impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Step three represents impairments at
24 the opposite end of the spectrum from those failing to meet the screening threshold severity
25 requirement at step two. If an impairment is found to meet or equal the criteria for a listed
26 impairment, it is considered presumptively disabling. Pursuant to the analytical procedure
27 prescribed by the regulations, after the ALJ determines that the claimant has a medically
28 determinable mental impairment, he then rates the degree of the claimant's functional limitations

1    in four areas, known as the "B Criteria":  (1) activities of daily living; (2) social functioning; (3)

2    concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R.

3    § 404.1520a(b)-(c).  In the first three areas, the ALJ rates the limitations as either none, mild,

4    moderate, marked, or extreme and the fourth functional area, episodes of decompensation, is rated

5    on a four point scale of none, one or two, three, and four or more.  20 C.F.R. § 404.1520a(c)(3)-

6    (4).  To satisfy the criteria, and meet or equal a mental impairment listing, a claimant must show

7    at least two "marked" limitations" or one "marked" limitation and repeated episodes of

8    decompensation, each of an extended duration.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing

9    12.04 (B).  Plaintiff bears the burden of showing his mental impairment(s) meets or equals a

10   Listing.  *Yuckert*, 482 U.S. at 146 n.5.

11          Plaintiff contends that the ALJ's failure to identify plaintiff's anxiety disorder as severe at

12   step two rendered the ALJ's analysis of plaintiff's mental impairments at step three incomplete.

13   ECF No. 16 at 12.  Plaintiff relies on *Keyser v. Commissioner of Social Security*, 648 F.3d 721

14   (9th Cir. 2011).  *Id.*  That case, however, is inapposite to the issue plaintiff raises.  In *Keyser*, the

15   court held that the ALJ erred because he failed to incorporate the mode of analysis in a

16   Psychiatric Review Technique Form ("PRTF") in determining whether the plaintiff's mental

17   impairments were severe and whether they met or equaled a listed impairment.  *Keyser*, 648 F.3d

18   721.  Here, the ALJ's analysis followed the proper PRTF and Criteria B analysis, thus *Keyser* has

19   no application.

20          Although the ALJ did not identify plaintiff's anxiety disorder as severe impairments at

21   step-two, the ALJ considered all of plaintiff's mental impairments in his step-three analysis.  AR

22   42-44.  In determining whether plaintiff's mental impairments equaled a listing, the ALJ

23   "considered all of the claimant's impairments individually and in combination," but found "no

24   evidence that the combined clinical findings from such impairments reach the level of severity

25   contemplated by the Listings."  *Id.* at 43.  Taking all of plaintiff's mental impairments into

26   account, the ALJ still only found mild limitations in daily activities and social functioning and

27   moderate limitations in concentration, persistence, or pace.  *Id.*  Thus, contrary to plaintiff's

28   /////

1 contentions, the ALJ did not focus solely on the effect of her depression in conducting the step-
2 three evaluation.

3 Accordingly, the ALJ did not err in assessing plaintiff's mental impairments at step three.

4     C. <u>The ALJ Did Not Err in Rejecting the Opinion of Plaintiff's Treating Psychiatrist</u>

5 Plaintiff also argues that the ALJ erred in improperly rejecting the opinion of plaintiff's
6 treating psychiatrist, Dr. Xingxing Luo. ECF No. 16 at 10-11.

7 The weight given to medical opinions depends in part on whether they are proffered by
8 treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.
9 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a
10 greater opportunity to know and observe the patient as an individual. *Id*.; *Smolen v. Chater*, 80
11 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical
12 opinion, in addition to considering its source, the court considers whether (1) contradictory
13 opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an
14 uncontradicted opinion of a treating or examining medical professional only for "clear and
15 convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or
16 examining medical professional may be rejected for "specific and legitimate" reasons that are
17 supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally
18 is accorded superior weight, if it is contradicted by a supported examining professional's opinion
19 (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.
20 *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d
21 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical
22 findings as a treating physician, but differs only in his or her conclusions, the conclusions of the
23 examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir.
24 2007).

25 Dr. Luo, plaintiff's treating psychiatrist, completed a Mental RFC Assessment on June 15,
26 2011. *Id.* at 764-768. Dr. Luo diagnosed plaintiff with bipolar disorder, depression, and manic
27 syndrome. *Id.* at 762. Dr. Luo opined that plaintiff has marked limitations in understanding and
28 remembering detailed instructions, maintaining attention and concentration for extended periods

8

of time, and working in coordination with proximity to others without being distracted by them. *Id.* at 764-765.  Dr. Luo also opined that plaintiff has moderate limitations in remembering locations, work procedures, and very short simple instructions; carrying out very short simple instructions, detailed instructions; performing activities within a schedule; maintaining regular attendance; sustaining an ordinary routine without special supervision, interacting socially; and adapting in the workplace. *Id.*

Plaintiff underwent a comprehensive psychiatric evaluation, which was conducted by examining psychologist Silvia Torrez, Doctor of Psychology.[2] *Id.* at 522-529.  Dr. Torrez diagnosed plaintiff with a mood disorder (not otherwise specified). *Id.* at 526-527.  She opined that plaintiff has a good ability in understanding and remembering very simple as well as detailed instructions, maintaining concentration and attention, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruptions at a constant pace, and dealing with various changes in the work setting. *Id*. at 528.  It was also her opinion that plaintiff's ability to accept instruction from supervisors and interact appropriately with coworkers is fair.  *Id*.  Dr. Torrez further opined that the likelihood of plaintiff emotionally deteriorating in the work environment is fair.  *Id*.

The record also contains a Mental RFC Assessment completed by non-examining physician Dr. Dalton.  *Id.* at 557-560.  Dr. Dalton opined that plaintiff is moderately limited in: carrying out detailed instructions; maintaining concentration and attention for extended periods of time; performing activities within a schedule, maintaining regular attendance, and being punctual in customary tolerance; sustaining a routine without special supervision; and working with and around others without being distracted.  *Id.* at 557.  Dr. Dalton also found that plaintiff has moderate limitations in: interacting appropriately with the general public; getting along with coworkers and peers; and responding appropriately to changes in work setting.  *Id*. at 558.  However, Dr. Dalton opined that plaintiff is capable of performing simple, unskilled tasks in a low stress setting with limited social interaction.  *Id.* at 559.

---

[2] Although the form in the record indicates that the examination was a "psychiatric" evaluation, Dr. Torres is a psychologist and not a psychiatrist.

The ALJ assigned limited weight to Dr. Luo's opinion, while giving great weight to the assessments by Drs. Torrez and Dalton. *Id.* at 46-47. Because Dr. Luo's opinion was contradicted by Drs. Torrez and Dalton's opinions, the ALJ was required to give "specific and legitimate reasons for rejecting Dr. Luo's opinion. *See Orn*, 495 F.3d at 632.

The ALJ gave several reasons for discounting Dr. Luo's opinion. First, the ALJ accorded it limited weight because "it is markedly inconsistent with [her] own treatment records that are relatively unremarkable." AR 47. Contradictions between a treating physician's assessment and clinical notes are a clear and convincing reason for an ALJ to reject the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ noted that "Dr. Luo's contemporaneous treatment record indicates that other than the claimant's depressed mood, the mental status examinations are all within normal limits and without any notable extremes to account for the dramatic findings . . . ." AR 47. Indeed, in the Short Form Evaluation completed on March 24, 2011, Dr. Luo indicated that plaintiff's concentration is intact and her memory was normal, and then opined that plaintiff had poor ability to understand, remember, and carry out complex instructions. *Id.* at 664-665. Further, Dr. Luo's treatment notes from January 2011 to late April 2012 consistently indicate that plaintiff has fair concentration and her memory is intact for the "immediate, recent and remote." *Id*. at 633, 676, 677, 678, 704, 707, 709, 714, 719, 720, 723, 771, 813, 815, 818, 820. These findings of fair and normal concentration and memory in the treatment notes are inconsistent with the extreme mental limitations opined by Dr. Luo, which included marked limitations in maintaining attention and concentration.

The ALJ further noted that Dr. Luo's opinion lacked "any explanation or rationale for the incongruent opinion on the form." *Id.* at 47. An ALJ may reject a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole or objective medical findings. *Baston v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also* Social Security Ruling 9602p, 1996 SSR LEXIS 9 (noting it would be "error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well supported . . . or if it is inconsistent with the other substantial evidence"). Dr. Luo's opinion took the form of three check-the-box forms and was not supported by a single explanation or rationale of how she

10

formed her opinion about plaintiff's extreme mental limitations. AR 663-665, 762-766. In the comment section, Dr. Luo simply wrote "[p]lease see my notes." *Id.* at 766. However, as discussed above, Dr. Lou's treatment notes are inconsistent with her stated opinion in the check-the-box forms. Accordingly, the ALJ properly gave reduced weight to the conclusory and unsupported opinion.

Significantly, plaintiff does not address these reasons in her motion for summary judgment. Instead, plaintiff argues that the ALJ should have given Dr. Luo's opinion controlling weight, instead of giving greater weight to Drs. Torrez and Dalton's opinions. ECF No. 16 at 9, 11-12. The ALJ did not reject Dr. Luo's opinion because it conflicted with the opinions of Drs. Torrez and Dalton. Rather, as explained above the ALJ gave a number of specific and legitimate reasons for rejecting Dr. Luo's opinion. *See Lester*, 81 F.3d at 830 (an ALJ may reject a contradicted opinion of a treating medical professional for "specific and legitimate" reasons).

Accordingly, the ALJ did not err in rejecting plaintiff's treating psychiatrist's opinion.

D. <u>The ALJ Erred in Assessing Plaintiff's Credibility</u>

Plaintiff next argues that the ALJ's rejection of plaintiff's subjective complaints and credibility is not supported by substantial evidence. ECF No. 16 at 8-10.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-347. The ALJ may also consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the

1    alleged associated pain is not a significant nonexertional impairment.  *See Flaten v. Secretary of*
2    *HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own
3    observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot
4    substitute for medical diagnosis.  *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990).
5    "Without affirmative evidence showing that the claimant is malingering, the Commissioner's
6    reasons for rejecting the claimant's testimony must be clear and convincing."  *Morgan*, 169 F.3d
7    at 599.

8    Plaintiff testified that her depression was her "biggest problem" because "it keeps [her]
9    pretty much bound inside the house," that her "bipolar disorder . . . keeps [her] from working,"
10   and that she doesn't "know how to deal with people anymore."  *Id.* at 66, 70.  Plaintiff also
11   testified that she is obese, which keeps her from being able to "get out and walk," and can
12   sometimes make standing difficult.  *Id.* at 84.  However, she stated she could assist with some
13   household chores, such as emptying the dishwasher or raking leaves and can drive to her doctor's
14   appointments.  *Id.* at 70-71.  Plaintiff further stated that she experiences side effects from her
15   medication, has difficulty concentrating, and that her diabetes causes her to feel weak, dizzy, and
16   lightheaded.  *Id.* at 75-76, 81, 83.

17   The ALJ found that plaintiff's statements regarding the extent of her limitations were not
18   fully credible.  *Id.* at 47.  The ALJ provided several reasons for rejecting plaintiff's subjective
19   complaints including: (1) non-compliance with diabetes treatment plan; (2) plaintiff's depression
20   was situational; (3) plaintiff's reported daily activities are inconsistent with the allegations of
21   disability; and (4) inconsistencies between plaintiff's statements and the medical evidence.  *Id*. at
22   47-48.

23   First, the ALJ discredited plaintiff's subjective complaints because of her failure to
24   comply with her diabetes treatment.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *see*
25   *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding where a claimant complains of
26   disabling pain but fails to seek treatment, or fails to follow prescribed treatment, an ALJ may use
27   such failure as a basis for finding the complaint unjust or exaggerated).  Here, the ALJ noted that
28   plaintiff "often did not bring her meter or log book, was not taking her medications, continued to

smoke, continued to drink alcohol, and was diet noncompliant." AR 47. In January 2010, treatment notes indicate that plaintiff failed to bring her glucose meter to her doctor's appointment. AR 436. Again in June 2011, treatment notes indicate plaintiff's failure to bring both her meter and her log book. *Id.* at 799. Plaintiff also reported to Dr. Seu that "[h]er glucoses are better . . . depending on her compliance with her diet." From this statement the ALJ could logically conclude that plaintiff was not consistently compliant with prescribed diet. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) ("[T]he ALJ is entitled to draw inferences logically flowing from the evidence"). There are also notations that plaintiff continued to smoke throughout the record. AR 424, 452, 595, 777, 784, 785. In the analysis of plaintiff's credibility, the ALJ specifically noted that plaintiff "often did not bring her meter or log book, was not taking her medications, continued to smoke, continued to drink alcohol, and was diet noncompliant." *Id.* at 47.

While plaintiff's noncompliance may be a clear and convincing reason for the ALJ to discredit plaintiff's subjective complaints, social security regulations only require plaintiff to be compliant with treatment that would restore her ability to work. *See* 20 C.F.R. §§ 404.1530(a) and 416.930(a). Here, the bulk of plaintiff's purported disability is due to her mental impairments. Furthermore, as noted by the ALJ, although plaintiff is sometimes noncompliant with her treatment, "the substantial record indicates minor issues with her diabetes." AR 47. Thus, even if plaintiff was compliant with her diabetes treatment, it would not affect her mental impairments nor "restore her ability to work." Moreover, the remaining reasons given by the ALJ fall short of the clear and convincing standard.

As for plaintiff's testimony regarding her mental impairments, the ALJ found that "notations state that [plaintiff's] depression was situational, as she had recently split up with her partner of 24 years, and was alone for the first time in her adult life (Ex. 2F, 3F, 4F, 10F, and 14F)." AR 47. Although there is evidence of a recent split from a significant other, the record indicates that plaintiff experienced depression and mental health symptoms well before plaintiff "split up with her partner" in September 2010. *See id.* at 649. In fact, plaintiff's medical records indicate that plaintiff attempted suicide in March 2008 after receiving news that a friend died

13

unexpectedly and was subsequently admitted to a crisis center for treatment. *Id.* at 276-279, 284-285. Since that time, plaintiff has consistently been receiving mental health treatment. Thus, the ALJ's reasoning that plaintiff's impairments are related to a recent breakup is not supported by substantial evidence.

The ALJ further rejected plaintiff's subjective complaints because they were inconsistent with plaintiff's reported daily activities and other statements. AR 48. While inconsistencies between plaintiff's testimony and reported daily activities constitutes a clear and convincing reason for discrediting plaintiff's subjective complaints, *see Burch*, 400 F.3d at 680-81, the ALJ failed to identify any inconsistencies in the record or explain what statements were inconsistent with plaintiff's daily activities. Instead, the ALJ leaves the plaintiff and the court to guess what evidence formed the basis for this reasons. This conclusory statement fails to meet the standards required for rejecting plaintiff's testimony. *See* Social Security Ruling 96-7p, 1996 SSR LEXIS 4 ("It is not sufficient. . . for the adjudicator simply to recite factors that are described in the regulations for evaluating symptoms. The determination must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight."). Thus, the ALJ's conclusory statement is not a clear and convincing reason for discrediting plaintiff's subjective complaints.

The final reason given by the ALJ for discrediting plaintiff's subjective complaints was that her statements were inconsistent with the medical evidence. AR 48. This reason alone, however, cannot serve as a basis for discrediting plaintiff's subject complaints. *See Burch*, 400 F. 3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Although the ALJ provided an adequate reason for discounting plaintiff's subjective complaints regarding her diabetes, the ALJ failed to adequately address why he rejected plaintiff's statements regarding her mental impairment.

/////

/////

14

1     Accordingly, the matter must be remanded for further consideration.[3]

2     As noted, plaintiff has argued that the various errors she alleges led to an incorrect RFC assessment that was relied upon by the Appeals Council in a misapplication of the Grids. The Grids present guidelines which have relevance to exertional impairments. They do not provide guidance for determining whether mental impairments (or other non-exertional impairments) are in question. *Desrosiers v. Sec'y of Health & Human Serv.*, 846 F.2d 573, 577 (9th Cir. 1988) ("This court has recognized that significant non-exertional impairments . . . may make reliance on the grids inappropriate."); *See Cox v. Astrue*, 2010 U.S. Dist. LEXIS 81134, at *11 (W.D. Wash. July 9, 2010) (finding that the grids did not accurately and completely represent the plaintiff's limitations to simple, routine work with limited social contact). Here, plaintiff's claim relies primarily on alleged limitations due to her mental impairments. Thus, although the Appeals Council properly noted that as of her 55th birthday the plaintiff would satisfy Rule 202.06 of Table No. 2 of the grids, requiring a finding of disability for exertional impairments based on the change in age category, AR at 8, the Grids only have application to plaintiff's exertional impairments. Nonetheless, the Appeals Council relied on the Grids to affirm the ALJ's finding of not disabled prior to September 15, 2011. The Grids do not take account of functional limitations from mental impairments. Nor is there anything in the record to suggest a sudden onset of disability on the 55th birthday. Thus, on remand, any determination of whether plaintiff was disabled prior to that date must be based on a determination of plaintiff's functional capacity in light of her mental impairments and vocational testimony. *Moore v. Apfel*, 216 F.3d 864, 869-870 (9th Cir. 2000) ("When the grids do not completely describe the claimant's abilities, such as when the claimant has both exertional and nonexertional limitations . . . , the grids are inapplicable and the ALJ must take the testimony of a VE.").

IV.   CONCLUSION

For the reasons set forth herein, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment and/or remand is granted;

---

[3] Because the court finds that remand is necessary for further consideration of plaintiff's subjective complaints, the court declines to address plaintiff's additional arguments.

15

2. The Commissioner's cross-motion for summary judgment is denied;

3. The Clerk is directed to enter judgment in the plaintiff's favor; and

4. The matter is remanded for further consideration consistent with this opinion.

DATED: March 25, 2015.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE